## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| MARIA CABALLERO, *et al.*, § | | |
| Plaintiffs, § | | |
| § | | |
| v. § | CIVIL ACTION NO. H-14-1828 | |
| § | | |
| KELLY SERVICES, INC., § | | |
| Defendant. § | | |

## **MEMORANDUM AND ORDER**

This Fair Labor Standards Act ("FLSA") case is before the Court on Plaintiffs Maria Caballero and Julie Cumley's (respectively, "Caballero" and "Cumley," and, together, "Plaintiffs") "Renewed Motion for Conditional Class Certification, Expedited Court-Authorized Notice to Prospective Class Members Pursuant to 29 U.S.C. § 216(b) and Equitable Tolling of Statute of Limitations" ("Certification Motion") [Doc. # 38],[1] "Plaintiffs' Opposed Motion for Leave to File Additional Evidence in Support of the Motion to Conditionally Certify a Collective Action" ("Motion for Leave") [Doc. # 41],[2] and Defendant Kelly Services, Inc.'s "Motion to Strike Declarations Submitted in Support of Plaintiff's Renewed Motion for

---

[1] Defendant Kelly Services, Inc. filed a Response [Doc. # 44], and Plaintiffs replied [Doc. # 48].

[2] Defendant filed a Response [Doc. # 47]; no reply was filed.

Conditional Class Certification" ("Motion to Strike") [Doc. # 42].[3]  All three motions are ripe for determination.  After considering the parties' briefing, all matters of record, and the applicable legal authorities, the Court **denies** Plaintiffs' Motion for Leave, **grants in part and denies in part** Defendant's Motion to Strike, and **denies** Plaintiffs' Certification Motion.  The Court accordingly also **denies** Plaintiffs' requests for court-authorized notice to the proposed class and equitable tolling regarding proposed class members' claims as moot.  The Court, finally, **denies** Plaintiffs' request for equitable tolling for their individual claims.

I.  **BACKGROUND**

On June 30, 2014, Caballero filed a complaint in this Court against Kelly Services, Inc. ("Defendant" or "Kelly Services") on behalf of herself and others similarly situated, requesting unpaid overtime compensation pursuant to the Fair Labor Standards Act ("FLSA").  Plaintiff's Original Complaint [Doc. # 1].  Cumley subsequently joined Caballero as a named plaintiff and Plaintiffs filed a Second Amended Complaint on November 17, 2014. Plaintiffs' Second Amended Complaint ("Complaint") [Doc. # 22].

Plaintiffs were employees of Kelly Services' Outsourcing and Consulting Group, where they were assigned to work as recruiters on the Weatherford International ("Weatherford") account.  Kelly Services recruiters worked on-site at Weatherford locations and/or remotely from their own homes.  Response to Certification Motion, Exh. A, Declaration of Jean Devine ("Devine Declaration") [Doc. # 44-1], at ECF page 3, ¶ 10.  Defendant classified these employees in two different categories of recruiters ("Recruiter I" and "Recruiter II").  Certification

---

[3]     Plaintiffs filed a Response [Doc. # 49].

Motion, Exh. A [Doc. 38-1], at ECF page 2. The differences between these categories are not material to the analysis in this Memorandum and Order.

The recruiters on the Weatherford account were all originally classified as exempt from overtime classification under the FLSA. On March 27, 2012, Mike Kelco, Program Supervisor in Defendant's Professional Payroll Outsourcing Department, sent Plaintiffs an email that informed them their classification as exempt was in error and that the position would be classified as nonexempt. Certification Motion, Exh. C [Doc. # 38-1], at ECF page 10 (the "March 27 email"). The email further explained that Plaintiffs would be compensated for actual hours worked and would be eligible for overtime compensation. *Id.* Defendant's employee handbook states that employees should "[e]nter only actual hours worked—no more and no less." Response to Certification Motion, Exh. A, Attachment 1 [Doc. # 44-1], at ECF page 9; *see also id.*, at ECF page 16 ("Kelly employees must record all actual hours worked, no more and no less."). The handbook also requires that employees instructed not to record all actual hours worked should "immediately notify the Employee Service Center," provides a contact number, and states that Kelly Services will pay overtime in compliance with the FLSA. *Id.*, at ECF page 16.

Plaintiffs allege that Defendant required them to work substantially more than forty hours per workweek, but never compensated them for overtime. Defendant has produced a spreadsheet with information regarding the recipients of the March 27 email. According to that spreadsheet, in addition to Plaintiffs, forty-four other Kelly Services employees received the email and were classified as Recruiter Is or Recruiter IIs. The spreadsheet reflects that these forty-six recipients reported to sixteen different managers and the recipients worked in eighteen different states. Certification Motion, Exh. A [Doc. # 38-1], at ECF pages 4–5.

Plaintiffs ground their Certification Motion on the spreadsheet, several other documents, and declarations by former Kelly Services employees Caballero, Cumley, and Ernest Garcia ("Garcia"), a former Kelly Services recruiting manager. Defendants responded in opposition and Plaintiffs replied. Approximately a week after filing the Certification Motion, on June 25, 2015, Plaintiffs filed their Motion for Leave, which requested permission to submit a declaration by Jesse Montalvo ("Montalvo"), a former Kelly Services employee, along with an FLSA Consent Form signed by Montalvo [Doc. # 40]. On July 10, 2015, Defendants moved to strike portions of the Caballero, Cumley, and Garcia declarations. Defendant and Plaintiffs respectively filed responses to the Motion for Leave and Motion to Strike.

## III. ANALYSIS

### A. Evidentiary Motions

#### 1. Plaintiffs' Motion for Leave to File Montalvo Declaration as Additional Evidence

Plaintiffs' Motion for Leave is untimely and incomplete. Plaintiffs explain that proposed class member Montalvo was unable to complete a declaration before June 19, 2015—the deadline for Plaintiffs' Certification Motion[4]—because Montalvo "only recently learned about this lawsuit" and, while he "planned to submit [a] declaration . . . on June 19, 2015," he was unable to do so for medical reasons. Motion for Leave [Doc. # 41], at 2; *see* Affidavit of Tracey D. Lewis [Doc. # 41-2], at 1, ¶ 3.[5] While

---

[4] This deadline was set on May 12, 2015. *See* Hearing Minutes and Order [Doc. # 37].

[5] Lewis explains that on June 16, shortly after Montalvo confirmed that he would send Plaintiffs' counsel a signed declaration and consent to join the lawsuit, he had to undergo emergency surgery, so Lewis did not contact him again until Montalvo reached out to her on June 23. Affidavit of Tracey D. Lewis [Doc. # 41-2], at 2, ¶¶ 4-6.

the Court is sympathetic to Montalvo's health concerns, Plaintiffs do not provide good cause for the delay in Plaintiffs' seeking to file Montalvo's affidavit. As early as October 22, 2014, Caballero had identified Montalvo as a person "likely to have information that bears significantly on all or some of Plaintiff's claims." Plaintiff's Initial Disclosures [Doc. # 18], at 8. Plaintiffs have not offered an explanation for why they waited until one week before their Certification Motion was due (and after the May 26, 2015 deadline for completion of discovery regarding the Certification Motion) to contact Montalvo.

In addition, significantly, it has been months since Montalvo's medical procedures and Plaintiffs have not submitted his proposed declaration despite Defendant's request to see it. *See* Declaration of Kathryn C. Palamount [Doc. # 47-1], at ECF pages 2–3, ¶¶ 5–6.[6] Plaintiffs' Motion for Leave is denied.

### 2. Defendant's Motion to Strike

The Court, in the interests of justice, considers the evidence Plaintiffs have submitted to the extent admissible under the Federal Rules of Evidence in deciding the Certification Motion. The Court otherwise denies the Motion to Strike.

### B. Conditional Certification

### 1. Legal Standard

When considering whether to certify a lawsuit under the FLSA as a collective action, courts in this federal district generally use a "two-step *ad hoc* approach." *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995) (citing *Lusardi v. Xerox Corp.*, 122 F.R.D. 463, 465–66 (D.N.J. 1988), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (Ellison, J.) (citing cases); *Richardson v.*

---

[6] Defendant noted this error in its Response on July 20, 2015 [Doc. # 47]. Moreover, from the available information, it appears Montalvo's averments would be cumulative evidence. *See* Motion for Leave [Doc. # 41], at 2.

*Wells Fargo Bank, N.A.*, 2012 WL 334038, at *1–2 (S.D. Tex. Feb. 2, 2012). At the first stage, the Court decides whether to issue notice to potential class members. *Walker*, 870 F. Supp. 2d at 465. The second stage occurs when discovery is largely complete and the defendant moves to "decertify" the conditionally certified class. *Id.* at 466. "Neither stage of certification is an opportunity for the court to assess the merits of the claim by deciding factual disputes or making credibility determinations." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 802 (S.D. Tex. 2010) (Rosenthal, J.).

At the notice stage, the Court's decision is generally based on the pleadings, affidavits, and other limited evidence. *Mooney*, 54 F.3d at 1214; *Walker*, 870 F. Supp. 2d at 465. Analysis at this stage requires the plaintiffs to show that "(1) there is a reasonable basis for crediting the assertions that aggrieved individuals exist, (2) that those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted, and (3) that those individuals want to opt-in to the lawsuit." *Walker*, 870 F. Supp. 2d at 465-66. "Although collective actions under the FLSA are generally favored, the named plaintiff(s) must present some factual support for the existence of a class-wide policy or practice." *Carey v. 24 Hour Fitness USA, Inc.*, Civ. A. No. H-10-3009, 2012 WL 4857562, at *1 (S.D. Tex. Oct. 11, 2012) (citing *Walker*, 870 F. Supp. 2d at 466).

The key consideration is that to be "similarly situated," there must be "substantial allegations that potential members 'were together the victims of a single decision, policy, or plan.'" *McKnight*, 756 F. Supp. 2d at 801 (quotations and citations omitted). To make this determination, courts generally look to the factual and employment settings of the individual plaintiffs, *see Hardemon v. H & R Block E. Enters.*, No. 11-20193-CIV, 2011 WL 3704746, at *3 (S.D. Fla. Aug. 23, 2011) (citations omitted), and the existence of a common policy or plan affecting the

potential plaintiffs. *See Russell v. Ill. Bell Tel. Co.*, 575 F. Supp. 2d 930, 937 (N.D. Ill. 2008) (explaining that a "plaintiff must make 'a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law'" to succeed on the "similarly situated" prong (quoting *Flores v. Lifeway Foods, Inc.*, 289 F. Supp. 2d 1042, 1045 (N.D. Ill. 2003))). Certification should be denied "if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *McKnight*, 756 F. Supp. 2d at 801 (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

Where minimal evidence is advanced at the notice stage, courts have observed that the conditional class determination "is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class" that provides potential class members with notice and the opportunity to opt in. *McKnight*, 756 F. Supp. 2d at 801 (quoting *Mooney*, 54 F.3d at 1214 n.8); *see also Walker*, 870 F. Supp. 2d at 465.

### 2. Analysis

Plaintiffs request conditional certification of a class of "[a]ll 44[7] 'Recruiter I' or 'Recruiter II' employees identified by Defendant as individuals that received an e-mail message dated March 27, 2012, that indicated they were not exempt from overtime and should begin to receive overtime compensation, worked overtime hours (over 40 hours per work-week as defined by the FLSA) within the past three years and were not paid such overtime compensation in accordance with the FLSA guidelines," or, in the alternative, "[a]ll Recruiter I and Recruiter II employees who: a) worked for Kelly services within the past three years; b) worked on the Weatherford account; c)

---

[7] It appears that Plaintiffs seek certification of a class of 46 individuals, when Plaintiffs themselves are included.

worked overtime hours (over 40 hours per work-week as defined by the FLSA); and d) were not paid overtime compensation in accordance with the FLSA guidelines." Certification Motion [Doc. # 38], at 1–2. Defendant argues that Plaintiffs have failed to make the minimal showing for class certification because they have not shown the existence of other aggrieved individuals, that Plaintiffs have not demonstrated that they are similarly situated to other potential class members, that collective action treatment is inappropriate because the claims will require individualized inquiries and would render the action unmanageable, and that Plaintiffs have not shown that other individuals are interested in opting into this action. Response [Doc. # 44], at 7–17.

### a. Existence of Other Aggrieved Individuals

Plaintiffs have presented evidence that there were 44 other Kelly Services employees working on the Weatherford account. Caballero and Cumley have identified some of these employees by name in their respective declarations. *See Hall v. Burk*, No. Civ. 301-CV-2487-H, 2002 WL 413901, at *3 (N.D. Tex. Mar. 11, 2002) (Sanders, J.) (noting that the existence of other aggrieved individuals may be shown by affidavits by other potential plaintiffs or by identifying other potential plaintiffs by name). Defendants dispute the sufficiency of the allegations in the declarations because they do not provide specific facts that show the these other employees were actually aggrieved. Response [Doc. # 44], at 8. That argument is best addressed in analyzing whether there is meaningful admissible evidence that there are other employees who are "similarly situated."

### b. Similarly Situated

Plaintiffs have failed to carry their burden of presenting meaningful admissible evidence that they are similarly situated to other potential class members. Plaintiffs allege a practice regarding themselves and 44 other employees at 18 locations who reported to 16 different supervisors. Plaintiffs, however, do not identify a "single

decision, policy, or plan" that unifies the allegations. Instead, Plaintiffs rely on factors that are not probative of whether there was an unlawful practice imposed by Defendant. Plaintiffs simply have not demonstrated by admissible evidence the existence of a common policy or plan adopted by Defendant affecting the potential plaintiffs and the other proposed class members, that is, the recruiters nationwide working on the Weatherford account.

More specifically, first, Plaintiffs contend that they are similarly situated to other potential class members because they all share the same primary job duties and received the same March 27 email regarding their FLSA classification as "nonexempt" employees. *See* March 27 email [Doc. # 38-1], at ECF page 10. This contention fails. Similar job descriptions are insufficient to support allegations of a defendant employer's unwritten national policy regarding overtime timekeeping practices. *Lay v. Gold's Gym Int'l, Inc.*, Cv. Nos. SA-12-CV-754-DAE, SA-12-CV-930-DAE, 2013 WL 5595956, at *5 (W.D. Tex. Oct. 4, 2013) (citing *Richardson*, 2012 WL 334038, at *4); *Collazo v. Forefront Educ., Inc.*, No. 08-cv-5987, 2010 WL 335327, at *2–3 (N.D. Ill. Jan. 28, 2010) (finding that similar job description was insufficient evidence of the situation of potential class members at another location); *Mike v. Safeco Ins. Co. of Am.*, 223 F.R.D. 50, 54 (D. Conn. 2004) (finding that a similar job description is insufficient evidence for certification where the alleged FLSA violation involves *deviation* from the job description).

The March 27 email, notably, neither constitutes nor proves an FLSA violation. Rather, that email announces the employer's policy to comply with the FLSA.[8]

---

[8] Plaintiffs do not appear to press a misclassification claim. *See, e.g.*, Certification Motion [Doc. # 38], at 22 ("The evidence presented herein demonstrates that Recruiters that worked for Kelly Services on the Weatherford account as explained herein were willfully not paid overtime compensation *when designated* by Defendant,
(continued...)

Plaintiffs assert an FLSA violation attributable to an unwritten policy of requiring proposed class members to work unrecorded overtime in contravention of the March 27 email. The fact that employees with similar job descriptions received the March 27 email is not probative evidence regarding alleged FLSA violations. *See generally Glatt v. Fox Searchlight Pictures, Inc.*, 791 F.3d 376, 388 (2d Cir. 2015) (denying conditional certification where "[n]one of the common proof identified" by the plaintiff would "address [the dispositive] questions"); *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012) ("Being similarly situated does not mean simply sharing a common status, like being an illegal immigrant. Rather, it means that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA.").

Plaintiffs have not met their burden to present some evidence that the alleged FLSA violations grounded on an alleged unwritten practice stemmed from a "single decision, policy, or plan." *See McKnight*, 756 F. Supp. 2d at 801. Plaintiffs claim to have identified a central decision by Defendant Kelly Services when they assert in the Certification Motion that "Kelly Services managers . . . instructed recruiters during one meeting at Weatherford headquarters not to record the actual hours they worked, even after the determination that they were non-exempt." Certification Motion [Doc. # 38], at 15. Plaintiffs cite the Amended Declaration of Julie Cumley ("Cumley Declaration"). Certification Motion, Exh. E [Doc. # 38-1], at ECF page 18, ¶ 12. The Cumley Declaration, however, does **not** attest to such a meeting or decision. Nor does

---

8     (...continued)
in writing, *as non-exempt employees* eligible for such compensation." (emphasis added)). Even if the Court were to apply the three-year statute of limitations, the most generous limitations period available for these claims, *see* 29 U.S.C. § 255, the Certification Motion was filed more than three years after the March 27, 2012 email. Any opt-in plaintiff's misclassification claim would be time-barred.

anything else in Plaintiffs' submissions establish a specific action or decision by Kelly Services that affected the recruiters Plaintiffs seek to include in the proposed class.

Plaintiffs rely heavily on a declaration from former Kelly Services supervisor Ernest Garcia, who supervised two recruiters on the Weatherford account. Certification Motion, Exh. L, Declaration of Ernest Garcia ("Garcia Declaration") [Doc. #38-2]. His declaration, however, does not provide evidence of relevant acts by *Defendant* or its supervisory employees taken at the direction fo Defendant. Garcia does not attest to a specific directive from his superiors at Kelly Services or any written communications that recruiters should not record overtime that they worked. Rather, Garcia states that he did not record his own overtime because he "knew there would be pushback from Kelly Services management." *Id.*, at ECF page 27, ¶ 12. He does not explain what conduct or statements by management gave him that impression. Garcia further explains it was his "understanding that Kelly Services would not want overtime hours recorded because it would increase costs. However, the expectation as communicated to [him] by Kelly management was to work as many hours as necessary." *Id.*, ¶ 13. Garcia does not identify the members of Kelly Services' management who communicated this to him nor state where they were located and which other supervisors or employees they oversaw. Garcia further explains in his declaration that he "was never informed about a Kelly Services policy about overtime compensation or given any instruction on how recruiters in [his] group should record overtime, if at all." *Id.*, at ECF page 26, ¶ 8. The Garcia Declaration amounts to one supervisor's personal impressions of Defendant's practices, but does not describe any specific acts or statements that provide a basis for those impressions. Garcia's subjective beliefs are insufficient basis conditional certification. *See, e.g.*, *Richardson*, 2012 WL 334038, at *4 (denying certification because, inter alia, most

C:\Users\shelia_ashabranner\AppData\Local\Temp\notesFFF692\1828CondCert.wpd   151005.0903

of the plaintiffs' declarations and depositions attested only to their subjective beliefs and understandings about overtime).[9]

Plaintiffs' argument that they and other potential plaintiffs are similarly situated because they reported to the same supervisors materially overstates Plaintiffs' evidence. In her declaration, Caballero names only Michelle Perkins and Cheri Wilcox as supervisors with whom she interacted. Certification Motion, Exh. D, Amended Declaration of Maria Caballero ("Caballero Declaration") [Doc. # 38-1], at ECF page 13, ¶¶ 11, 15. Cumley names only Ernest Garcia. Cumley Declaration [Doc. # 38-1], at ECF page 18, ¶ 14. Neither Cumley, Caballero, nor Garcia identify any other supervisors who adopted the alleged unwritten practice. *See* Garcia Declaration [Doc. # 38-2], at ECF pages 26–27. On this seminal issue, the three declarations refer generically to "my Kelly Services managers" or other unidentified supervisors. At best, Plaintiffs' declarations attest to their interactions with three supervisors who, in total, oversaw only seven employees out of the forty-six–member proposed class,[10] without providing evidence of how those managers interacted with

---

[9]  Any actions by Garcia pursuant to his personal or unilateral understanding of what Kelly Services would prefer are, at best, evidence of a potential FLSA violation by a single manager. *See Lay*, 2013 WL 5595956, at *5 ("The fact that managers within one specific region allegedly required or condoned off-the-clock work, without further evidence, is insufficient to warrant certification of the *national* class . . . [that] Plaintiffs request."); *Richardson*, 2012 WL 334038, at *4 ("The fact that three or four managers allegedly required or condoned off-the-clock work is insufficient to warrant the complex, enormous, nationwide class that Plaintiffs request.").

[10]  According to Exhibit A, Michelle Perkins supervised four employees (in Louisiana and Texas), Ernest Garcia supervised two (one in Texas and one in Indiana), and Cheri Wilcox only supervised one (in Texas). *See* Certification Motion, Exh. A [Doc. # 38-1], at ECF pages 4–5. Although Garcia appears to have supervised an employee in Indiana, the Court cannot rely on his Declaration regarding a national unwritten practice for the reasons state above.

any other employees or how they were part of a company-mandated national managerial practice.

These statements in the declarations do not provide sufficient facts to extrapolate a company-mandated national management practice that affected the many other potential plaintiff class members. In contrast to Plaintiffs' limited exposure, the proposed class members reported to thirteen other managers, and worked in multiple cities in Texas and seventeen other states. Certification Motion, Exh. A [Doc. # 38-1], at ECF pages 4–5.[11] Even in the Houston area, where Caballero,[12] Cumley, and Garcia worked, Plaintiffs' Exhibit A indicates that the employees reported to five different supervisors.[13] Plaintiffs' submissions attest only to actions by two of the five supervisors. Although Cumley states that Ernest Garcia was "one of [her] supervisors," Plaintiffs' Exhibit A indicates that he supervised two employees on the Weatherford account, neither of whom were in Houston.[14] Plaintiffs have not provided sufficient information regarding the structure and practices of the

---

[11] In addition, Plaintiffs attribute their heightened workload to contact with unnamed persons in "Weatherford management." Caballero Declaration [Doc. # 38-1], ¶ 10; Cumley Declaration [Doc. # 38-1], ¶ 10. This fact introduces another variable into the analysis of whether the Plaintiffs are similarly situated with other potential class members.

[12] Although the Caballero Declaration was notarized in Harris County, Plaintiffs' filings do not state the specific site at which Caballero worked. Since her supervisor, Cheri Wilcox, only supervised one employee on the Weatherford account and that employee was in Houston, the Court infers Caballero worked in Houston.

[13] Jill Brummer (one employee in Houston), Frances Hayes (four employees in Houston), Michelle Perkins (one employee in Houston), Theresa Whelan (one employee in Houston), and Cheri Wilcox (one employee in Houston).

[14] Exhibit A reflects that two employees reported to Garcia: one located in Corpus Christi, Texas, and one located in Indiana.

management who oversaw the proposed class for the Court to infer a national unwritten practice from Plaintiffs' admissible evidence.

Resolution of the proposed class members' claims would require individualized inquiries on essential factual issues. This defeats the purposes of the collective action procedure. Such issues include the individual practices of each supervisor, the communications of each supervisor with Defendant's management regarding overtime practices, the effect of each supervisor's individual practices on the hours worked by each employee, and each employee's time-keeping practices. *See Vanzzini v. Action Meat Distribs., Inc.*, 995 F. Supp. 2d 703, 723 (S.D. Tex. 2014) (Ellison, J.) (decertifying class as to employees whose claims were "not susceptible to proof through representative evidence"); *Jones v. Xerox Commercial Sols., LLC*, Civ. A. No. 4:13-cv-650, 2013 WL 5945652, at *6 (S.D. Tex. Nov. 6, 2013) (denying certification where alleged violations were "not the result of a systemic policy," so "assessment of the[] issues necessitates an individual inquiry for each Plaintiff, thereby making a collective action inappropriate"); *Andel v. Patterson-UTI Drilling Co.*, 280 F.R.D. 287, 290 (S.D. Tex. 2012) (Rainey, J.) ("Courts have refused to permit FLSA suits to proceed as collective actions if the individualized inquiries required would eliminate the economy of scale envisioned by the FLSA collective action procedure." (quoting *Maynor v. Dow Chem. Co.*, Civ. A. No. G-07-0504, 2008 WL 2220394, at *7 (S.D. Tex. May 28, 2008) (Rosenthal, J.))). Plaintiffs' submissions do not support an alternative theory that could avoid fragmenting the proceedings into these individualized inquiries. This case is therefore not suited to proceed as a collective action.

Plaintiffs' reliance on *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528 (S.D. Tex. 2008) (Ellison, J.), is unavailing. At the notice stage, the *Falcon* plaintiff

produced more comprehensive evidence that the extent of the proposed class members' assignments and duties were irreconcilable with the defendant's formally stated overtime policy as a systemic matter. *See* Response to Certification Motion, Exh. B (Memorandum and Order, *Falcon v. Starbucks Corp.*, Civ. A. No. H-05-0792 (S.D. Tex. Nov. 29, 2005) (Ellison, J.)) [Doc. # 44-2], at 2 (noting that the plaintiff submitted seven declarations from other employees who had worked uncompensated overtime for identical reasons). Here Plaintiffs have submitted only their own and Garcia's declarations, which all lack the detail presented to the *Falcon* court.

Unlike plaintiff Falcon, Plaintiffs here have not substantiated the claim that others were pressured to work unrecorded and uncompensated overtime in the manner alleged by Plaintiffs. Caballero names sixteen other employees whom she knew worked on the Weatherford account, but attests only that she believes three of the group worked overtime hours. Caballero Declaration [Doc. # 38-1], at ECF page 14, ¶ 23. Significantly, Caballero does not state that Kelly Services failed to compensate these employees for overtime hours worked, nor explain the basis of her belief they worked more than forty hours in any week. Similarly, Cumley names fourteen individuals (most of whom are also named by Caballero) that she claims worked overtime. Cumley Declaration [Doc. # 38-1], at ECF page 19, ¶ 24. The basis for Cumley's claimed knowledge appears to be that she saw employees working "long hours" at the Weatherford site in Houston, Texas. *Id.* Plaintiffs' conclusory assertions that others worked overtime are undermined by the fact that recruiters "frequently . . . work from home via telephone and internet" and thus outside the presence of other Kelly Services' recruiters. *See* Devine Declaration [Doc. # 44-1], at ECF page 3, ¶ 10; *see also* Cumley Declaration [Doc. # 38-1], at ECF page 16, ¶ 6 ("We worked both on-site and remotely."). Cumley does not state whether Kelly

Services failed to compensate these employees for overtime hours worked. The Plaintiffs accordingly do not provide the necessary link between Cumley's observation that other employees in Houston worked long hours and a unifying factor that Kelly Services engaged in a national de facto practice requiring employees to work **unpaid** overtime hours. Plaintiffs' conclusory assertions that "off-the-clock work was expected and was the continuing culture," Caballero Declaration [Doc. # 38-1], at ECF page 14, ¶ 21; Cumley Declaration [Doc. # 38-1], at ECF page 19, ¶ 22, are not probative evidence of a common practice by Defendant to violate the FLSA. *See Richardson*, 2012 WL 334038, at *5 ("Plaintiffs also rely on personal bankers' alleged difficulty of finishing all their assigned duties within a forty-hour workweek and managers' alleged awareness that employees worked unlogged hours. Subjective beliefs or fear about logging overtime hours is insufficient to establish an actual company-wide policy.").

Finally and tellingly, Plaintiffs dispute that a "single decision, policy, or plan" is required to satisfy the "similarly situated" element. Certification Motion [Doc. # 38], at 14. The Court need not resolve this legal question because Plaintiffs have not provided sufficient evidence that the other potential class members share their experiences. Instead, Plaintiffs invite the Court to speculate for a national class about the experience of forty-four other employees and the management practices of thirteen other managers across eighteen states. The FLSA does not mandate such extrapolation without more meaningful evidence of the employer's practices.

### 3. Desire to Opt In

Plaintiffs argues the Court should not consider the third factor in the conditional certification analysis, whether additional aggrieved individuals wish to opt in to the action, because this factor is inconsistent with the text and purposes of the FLSA.

Certification Motion [Doc. # 38-1], at 17. It is unnecessary to resolve this legal question because Plaintiffs filed the FLSA consent form completed by Montalvo, which indicates some interest by additional parties. *See Simmons v. T-Mobile USA, Inc.*, Civ. A. No. H-06-1820, 2007 WL 210008, at *9 (S.D. Tex. Jan. 24, 2007) (noting that various forms of proof satisfy a plaintiff's burden on this factor).

In sum, Plaintiffs have not shown they and the proposed class members suffered from a single decision, policy, or plan, even under the applicable lenient standard. The Court therefore denies the Certification Motion.[15]

### C. Expedited Notice and Equitable Tolling

In the Certification Motion, Plaintiffs seek equitable tolling of the statute of limitations regarding their individual claims. They contend that Defendant's original classification of their positions as "exempt" "misled" them such that the time between the date of their hire through March 27, 2012, when they were reclassified as nonexempt, should not count against the statute of limitations. Such a garden-variety misclassification allegation, however, is not among the "rare and exceptional circumstances" required for equitable tolling. *See, e.g.*, *Switzer v. Wachovia Corp.*, No. Civ. A. H-11-1604, 2012 WL 1231743, at *2 (S.D. Tex. Apr. 12, 2012) ("Plaintiffs have not demonstrated that Wachovia did anything more than inform its employees that they would be compensated in a certain manner in accordance with what Wachovia believed to be its rights under the FLSA. To apply equitable tolling under such circumstances would extend the limitations period indefinitely and would

---

[15] The Court denies Plaintiffs' requests for court-authorized notice to the proposed class and equitable tolling regarding proposed class members' claims as moot due to the denial of conditional class certification.

eviscerate the entire statute of limitations scheme under the FLSA."); *compare Cruz v. Maypa*, 773 F.3d 138, 146 (4th Cir. 2014) (applying equitable tolling where defendants confined plaintiff to "virtual imprisonment"), *with Parada v. Banco Indus. de Venez.*, 753 F.3d 62, 71 (2d Cir. 2014) (declining to apply equitable tolling in the absence of evidence that alleged misclassification was willful). Plaintiffs' request for equitable tolling regarding their individual claims is therefore denied.

## IV. CONCLUSION AND ORDER

Based on the foregoing, the Court concludes that Plaintiffs have failed to meet their burden to show that they and the putative collective action plaintiffs were similarly denied overtime pay under a "single decision, policy, or plan" that violated the FLSA. Moreover, Plaintiffs' request for equitable tolling is denied. Accordingly, it is hereby

**ORDERED** that Plaintiffs' Renewed Motion for Conditional Class Certification, Expedited Court-Authorized Notice to Prospective Class Members Pursuant to 29 U.S.C. § 216(b) and Equitable Tolling of Statute of Limitations [Doc. # 38] is **DENIED**. It is further

**ORDERED** that Plaintiffs' Opposed Motion for Leave to File Additional Evidence in Support of the Motion To Conditionally Certify a Collective Action [Doc. # 41] is **DENIED**. It is further

**ORDERED** that Defendant's Motion to Strike Declarations Submitted in Support of Plaintiff's Renewed Motion for Conditional Class Certification [Doc. # 42] is **GRANTED IN PART AND DENIED IN PART**.

SIGNED at Houston, Texas, this **5th** day of **October, 2015**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE